Well, good afternoon. Is it afternoon? No, it's not afternoon yet. More fun in the morning. Well, folks, and we are going to do the Zuber matter first, I believe, right? Counsel? Morning, Your Honors. I wish to clarify that we seek to reserve five minutes in rebuttal. We were provided 15 minutes, five of which have been ceded to the amicus. All right. The question before this Court is whether the agreement at issue, which is titled Compromise and Release Agreement by Stipulation Pursuant to Section 449 of the Workers' Compensation Act, extends beyond its terms and includes a waiver of claims under the Federal Family and Medical Leave Act or the Pennsylvania Common Law. When the release itself identifies the issues to be resolved as those related to the August 12, 2014 work injury claim, is it your position that the compromise and release is unambiguous, or do you think it's ambiguous, in which case we need to send it back? Our position, Your Honor, is that it is unambiguous, that the intention of the parties is clear, that it is only to release the claims raised by claimant related to the August 12, 2014 work injury claim. And that is the only claim that is referenced throughout the release. It makes no mention of general employment claims and does not in any way reference the Family and Medical Leave Act or the Pennsylvania Common Law. Are there any things in the records that would indicate that the parties discussed the scope of the release and whether it dealt with the kinds of things that the District Court held that it did? In other words, could somebody file an affidavit and say, well, we discussed this? Your Honor, an affidavit could not be filed to say something was discussed that is not reflected in the release itself. That would be parole evidence. The record does include a colloquy of Zuber in advance to signing the workers' compensation claim, but the colloquy itself makes clear that the only issues discussed were the workers' compensation claim. He discusses the August 12, 2014 injury. He identifies that he understands he's not entitled to compensation on account of the injury or any additional future medical benefits. It discusses medical benefits and benefits available under the statute. And, again, agrees that he is not entitled to compensation on account of the injury. There is no discussion in the colloquy preceding the acceptance of the workers' compensation claim of claims outside of the Act. And that is because the parties did not intend to release any claims outside of the Act. Such claims are not mentioned at any point throughout the compromise and release. In fact, the release states that the issues involved in the claim are the nature and extent of the alleged work injury, disability, and need for medical treatment. This is in Section 16 of the compromise and release. And then it states that the parties enter into this compromise and release to amicably resolve these issues. Furthermore, the release identifies the consideration to be paid to Zuber for purposes of his workers' compensation claim. In Section 13, which is on page 9 of 10 of the compromise and relief, it identifies how the benefit to Zuber was calculated. And benefit, Your Honor, is a term of art. It identifies those benefits which are available under the workers' compensation statute. There is no consideration provided to Zuber for any release of claims outside the workers' compensation statute within this release. Is work injury claim also a term of art? Yes, Your Honor.  It's the claim that's raised by the filing of the workers' compensation claim itself. And it does not include all claims that the claimant could have raised. That is not included at any point within this release. Pennsylvania law requires that there be separate consideration for each portion of a release. It is clear on the face of this document that the consideration provided to Zuber was on account of the eye injury. There is no consideration for the loss of employment, which he asserts in his wrongful termination and family medical leave act claim. And that's because it was not the intention of the parties to include a release of those claims. This release was signed in April of 2015. At the time that the release was signed, Zuber had already been terminated. And Boscovsk could have easily included language that waived that release. We would assert that the practice amongst workers' compensation attorneys would be to create a separate release outside of the compromise and release. And that is because the compromise and release must be presented to a workers' compensation judge to approve. The jurisdiction of that judge is limited to jurisdiction to approve releases within the act. The release provided that it would be a full and final resolution of the alleged work injury claim. And it's SEQUELLA, S-E-Q-U-E-L-L. What does that word mean in this context? Yes, Your Honor. We would assert that SEQUELLA, first of all, is modified by the August 12, 2014, alleged work injury claim. SEQUELLA is a medical term. It includes any complications that may arise from the injury so that if Clayton later suffered further injury to his eye, he would not be entitled to reopen his workers' compensation claim and seek damages related to that injury. Is SEQUELLA singular or plural? SEQUELLA in this instance is, I believe it is plural, Your Honor. It is plural, isn't it? But SEQUELLA is not, it is modified by the work injury claim. It is not SEQUELLA considering any and all types of employment claims that a claimant may raise, which FOSCOS asserts. They assert that there's a general release included within this compromise and release, and there is no language to indicate that. So even though SEQUELLA can have different meanings, depending on whether you look at it as a legal term or a medical term, your position is its medical definition is the one that applies because the work injury claim precedes it. That's correct. And because it is used in the context of a foreign compromise and release to release work injury claims. If I could ask you a question on the declaration, what authority would a district court have to consider a declaration under Rule 12b-6? It's not indisputably authentic. It's not the kind, it's not like the transcript. It's not like the document, the compromise and release claim. So what authority would the district court have to consider that? Well, the district court only has authority to review parole evidence to the extent it determines that there are ambiguities within the contract. Our position initially is that there is no ambiguity, but to the extent the district court could have determined ambiguities existed, it could then look outside of the four corners of the document. But then wouldn't it have to convert this to Rule 56? That's correct. So in order for you to get relief, we have to find it unambiguous. Well, Your Honor, appellate's position is that it is not unambiguous. Appellate's position is that it is not ambiguous, that it is clear on the face that the intention of the parties was only to resolve the workers' compensation claim. But to the extent, Your Honor, to not find that we would ask that that would be because ambiguities exist within the document and therefore it would be remanded for further review. Thank you. All right. Thank you. Are you an advocate, sir? I'm not. Mr. Chapin is on the phone. Ah, I see. Thank you. Mr. Chapin? Mr. Chapin? Yes. You may proceed. You have five minutes. I thought the five minutes I was given was at the end of the argument. I thought it was broken down. Five, then the appellee, and then ten minutes for us. Actually, no. You have five minutes, and then five minutes will re-bottle for Ms. Arora again. No. I'm sorry. No. Here's what we're doing. Mr. Chapin? That's your name? Yes, sir. Yes, sir. Good afternoon. This is Judge Greenaway. Here's what we're doing. You're going now. Okay. And then we are going to hear from Mr. Ross, and then we will hear from Ms. Arora. I apologize, Your Honor. No worries. Please proceed, sir. Thank you, Your Honor. My name is Lawrence Chapin, and I'm here on behalf of the Amicus Pennsylvania Association for Justice. We support the appellant's position that a compromise and release cannot be used to do a general, full release of any and all claims that are outside of the Workers' Compensation Act, which is the position of the appellee in this case. First of all, the real issue is if the Workers' Compensation judge had not approved this agreement, the defendant would lose its claim that there is a release, even though the party signed it. Under Section 449 of the Workers' Compensation Act, the Workers' Compensation judge must review to make sure that the injured worker fully understands the legal significance of the compromise and release that is being signed. If the Workers' Compensation judge does not believe that the claimant understands the full legal significance, the judge is not to approve it. So even though the parties may have signed this document, that does not mean that there was a release that would have been signed had the judge not approved it. So what the boss cause is arguing is that because the judge approved it, he therefore approved a general settlement of claims outside of the Workers' Compensation Act. That is clearly not possible. Why is it clearly not possible? There is case law that says judges who might lack jurisdiction over a particular cause of action could still approve a settlement that releases those claims. Why is the Workers' Compensation judge different? Well, the Workers' Compensation judge's authority derives solely from the Workers' Compensation Act. The judge does not have the authority to determine if an injured worker understands the full legal significance of any settlement outside of the Workers' Compensation Act. And further, the colloquy that was done, neither from the claimant's counsel, nor particularly from Boscoff's counsel, asked the claimant whether or not he understood he was releasing claims that were outside of the Workers' Compensation Act. Is it necessary for it to even reach that larger issue? What we have to decide is whether this agreement contemplates a release. If we conclude that the language of its terms, as the appellant's counsel is arguing, is clear that it doesn't include this release, we don't need to reach your point, correct? Your Honor, I think what, at least from the perspective of the amicus, what we're asking the court to do is to declare that, at least in federal court, these cannot be used as general releases because of the limited jurisdiction and coverage that's given by the Workers' Compensation Act. Suppose the parties discussed the question of a possible claim under the Family and Medical Leave Act, and they actually discussed it, and they decided, look, let's wrap up everything, every possible claim that will never be back in court, and that they have agreed specifically that the release would cover that claim. Now, I realize the workers' compensation judge might have jurisdiction over workers' compensation claims, but why wouldn't the parties themselves be able to come to that conclusion that they want the release to cover this claim, which is outside the workers' compensation context? Your Honor, there is nothing to preclude the parties from doing that. However, that gets to the second point I wanted to make, is that a release for the FMLA and wrongful termination creates a taxable income situation. The compromise and release agreement on its face does not allocate any money to the FMLA or wrongful termination claims. Therefore, one has to presume that then all the money, the $10,000, can be considered allocated to those claims, and it should be taxable. And if that's the case, Boscov should have issued a 1099 for this amount, and as far as we know, they did not. What economic recovery can you get under the FMLA? Pardon me? I said, what economic recovery can you get under the FMLA? The economic release under the FMLA is limited to wage loss and benefits, Your Honor, and clearly wage loss on a civil action under employment law is taxable under Section 104 of the IRC. But the fact that they didn't issue a 1099, I'd like to have all the money that's paid in settlements with 1099s. 1099s were not issued, but probably should have been. I think that may happen a lot. Maybe I'm wrong. Your Honor, in my experience, the defendants are very careful about issuing 1099s because they don't want to be caught in the situation where they haven't reported this income to the Internal Revenue Service. But the fact of the matter is, as Appellant's Counsel already said, when employment claims are settled as part and parcel of a workers' compensation claim, there's always a separate release because of this issue. The claimant will sign a separate release that has a separate consideration, and therefore the issue of what's in the compromise and release never comes up. And if Boscov really intended to do this, that's what would have been done. In my experience, no workers' compensation attorney worth his or her salt would allow a compromise and release agreement to cover general employment law claims because of the tax consequences. You have to avoid those things in workers' compensation because, in all instances, workers' compensation benefits are not taxable, either under state or federal law. Counsel, I have one further question for you. I know it's not part of your briefing, but is the term work injury claim a term of art? Your Honor, yes, I believe it would be. In the context of a compromise and release agreement, a claim is what is made when somebody gets hurt. The initiating document, if an employer does not accept liability for a work injury, is called a claim petition. And that is what is found here. That's a term of art that's used in the regulations governing the Workers' Compensation Act, and that's a term of art that is used in the statute itself. Thank you. All right. Thank you very much, Counsel. We'll hear from Kelly's counsel now. Thank you. Good morning. Good morning. My name is Alex Ross, and I represent the defendant, Apple Lee Boskovs, in this case. Your Honors, I want to direct your attention to the fact that, in this particular situation, the plaintiff, Mr. Zuber, and his counsel knew full well that they were executing a release of any and all claims that they had, and it specifically said so in the document that they executed, and it specifically said so in the transcript of the colloquy of the settlement here. Sorry. Sorry. This has been our good fortune.  Go ahead, Judge. So my question is, where are you focused on? Because as I look at 16 and 19, particularly 19, and, you know, I guess you could focus on a couple of areas, right? So the first one would be alleged work injury claim and its sequela. Then the alliteration of, you know, wage loss benefits, et cetera, et cetera, there. But also, as you continue, it's like it's almost every sentence reminds the reader that this is about work injury and workers' compensation, and those claims that are specifically related to that area. So maybe let's start then with work injury claim and its sequela. Yes, Your Honor. Thank you. My argument in response to that and my position is that if that was the case, there would be no need for paragraph 19. The regulations promulgated under the Pennsylvania Code specifically say, under Pennsylvania Code 34PA Code Section 131.57B, proposed compromise and release agreements, including the stipulations of the parties, shall be recorded on a form prescribed by the Bureau. The parties may attach additional information to the form if circumstances so require. And, in fact, the form, which is stipulated by the State here, includes a section that says State additional terms and provisions. So I take it that your position would be, in looking at paragraph 19 specifically, that if we were here not on an FMLA claim, but instead a Title VII claim or an ADA claim or any of the numerous acronyms that we use for federal statutes, that, in fact, all of them, if I were to enumerate them here, would fall within the ambit of this release. If it is the intent of the parties to do so, Your Honor, I would say... Well, that's not my question. That was a great workaround. But my question is, is the language as you've captured it here, would that encompass all of the claims that I've just enumerated? I would say yes. And I would say yes specifically because, and if I may, read what the language says. It says employer and employee intend, intend, so it lists what their intention is in paragraph 19, for the hearing, compromise, release, and agreement to be a full and final resolution of all aspects of the 8-12-2014 alleged work injury claim and its sequelae, whether known or unknown. Okay, so let's stop for a moment. Let's just play with my hypothetical. Sure. Okay, I have a discrimination claim for natural origin or whatever, whatever claim you want, right? How would that possibly fall within the ambit of this? How would that fall within work injury claim and its sequelae? The way it works, in my judgment, Your Honor, and the judgment of the appellee, is that the court looked at the totality of the circumstances, and looked at the actual clear and specific language of the release, as in the Hogard case that was relied upon by the district court in this case, and said if the language is clear enough, broad enough, general enough, specific enough, and includes all these claims, and if that was the intent of the parties, then in fact it should be enforced. And that's what we're relying on here, is that the totality of the circumstances of this case. Mr. Zuber knew at the time, he should have known or did know, that he had another claim. This claim was filed only three months after this settlement occurred. There is no way. He could have had ten claims. The question is whether this enumeration of, or I should say, this statement of the scope of what he's waiving is specific enough to have that fall within its parameters. The complaint filed by Mr. Zuber specifically says it is derived from his work injury claim and the reaction that the employer had to that claim, which he claims he was fired or terminated because of it. We deny that. However, that's what his complaint says. In the transcript of the hearing, in addition to the release, the actual words coming out of Mr. Zuber's mouth, he was questioned by his own attorney. The question, this is again for a full, final, and complete settlement of any claims that may have arisen from that incident that allegedly occurred on August 12, 2014. Am I correct, sir? Answer, yes, you are. Any claims. That's what the court relied on. That's what the Hogart court relied on. Once you start saying any claims, and as the release language says, all aspects of the alleged work injury claim, including, but not limited to, any other monies of any kind. I mean, if I was, in hindsight, if I was writing a release, I would have included this exact same language. What the amicus counsel is trying to say that you have to sign another release. You have to wear a belt and suspenders. It's not enough if you release every claim, known or unknown, of any kind, and you give up any right to any more money. That's not enough. You have to sign yet another document saying, on top of that, we also release any other claim, known or unknown, that we may or may not have, that we don't know or should know about. I mean, it's really almost holding on preposterous. What you're saying is that the general release, which we are all familiar with in practice, would be superfluous because this could be interpreted as a general release. And that's the way it was interpreted by the parties, according to the transcript testimony, sworn testimony of Mr. Zuber, the understanding of the workers' comp judge, and the actual release language. If I may say, if Mr. Zuber, apparently he knew he was going to file yet another claim, he could have put something in here. However, I am not releasing any claims for employment termination or employment-related claims. And that would have alerted, at that time, the defendant, Bostoff, that, hey, wait a minute, we don't even believe that you should have this workers' comp claim, and now you're saying you're reserving your right to file yet another claim? You're not getting your $10,000, Mr. Zuber. That's what this is all about, that he wanted the money for this claim, and yet kept in his pocket secretly another claim that he was about to spring on the defendant that the defendant had no way of knowing. They're asking us to put in claims here that we had no way of knowing that were even in existence. But we solved that by putting in the language, known or unknown. The day after he signed this, was he still an employee? No. No, he was not employed. In fact, this claim petition was filed. I mean, I know that was the answer. Yes. It's just a predicate. All right, okay. So he was an employee, right? No. He learns that day of a claim that he didn't know about, that has nothing to do with workers' compensation. The day after? Yeah. Then that claim would not have accrued by the time this release was signed. Well, it says, if you said known and unknown, let me see now, you said, all past, present, and or future benefits. So if that's so, then a claim that he learned of the day after he signed this, according to you, would fall within the ambit of the release. Yes. If he learned about, yes, it's known or unknown, that would be correct, Your Honor. That would be correct. So that claim that I've just hypothesized, he would have waived by this? Yes. Okay. Yes, known or unknown. That is correct. So what do you say about that argument that there's a tax consequence here, and to the extent that there's a workers' compensation settlement, there's no tax, no 1099, but to the extent that it's a family medical leave act, there would have to be a 1099. And in this case, there's no breakdown. What do you think of that? Well, Your Honor, I take the same position that you did a moment ago, saying that every time I've settled a case, if a 1099 should have been filed, there would be millions of dollars involved in such a thing. But the fact of the matter is, the claim that was available, and that was known and was part of this case, and claims that were known and unknown were included in this release. So our feeling is that's a complete red herring. If Mr. Zuber wants to claim that he received income and wants to pay taxes on some payment that he subsequently received, that's his business. It has nothing to do with what we were required to do. It would be the same as if, let's say, at the time Boscov signed this release, Boscov secretly knew that Mr. Zuber owed Boscov $10,000 for a loan. That wasn't mentioned in here. And then the day after this, Boscov says, well, we're not going to pay you the money under this release, sir, because you've released all claims, we've released all claims, and we had this secret claim that you should have known about, but you didn't. So what the Amicus Council is very cleverly trying to rope in claims that, you know, everybody should have known about at the time, and you're releasing it. The purpose of this document was to end and terminate all litigation. But isn't it our responsibility to read everything within this paragraph and in the entire document, the language you draw our attention to, all aspects of the 812 alleged work injury claim and its sequela? Right? If I just finish? Yes, of course. And then later in the paragraph, it speaks about the work injury claims worsening. In context, isn't it fair to read this as saying this is discussing the physical consequences of the events of August 12th, and that's all that's being released here, rather than other things, like he got fired and he thinks it was retaliatory. If we read this in context, how do you get around the fact that there's language in this particular paragraph that seems to draw our attention back to the fact that we're talking about the work, the physical injury aspect, and bringing no further claims arising from that? If I may, Your Honor, it's because the language itself is broad enough to encompass this other language. It's far more broad than the Hogard case, which previously held in a similar fashion. And it says the work injury claim and sequelae, whether known or unknown, sequelae is anything that follows or is a result from. It doesn't necessarily, it's not limited to medical terms. Well, that's a definition of it. Pardon me? That is a definition of it. It's a legal definition, but there's also a medical definition. Yes, if I was a physician at Jefferson Hospital, I would consider that to be the right definition. Oh, if there's ambiguity in the definition, don't we have to send this back? No, I think that this release is certainly broad enough. It includes, and I repeat, it says any other monies of any kind, including but not limited to, and then it goes on to benefits, costs, attorney's fees, in connection with the 8-12-2014 work injury. This complaint that we're here about today is in connection with. There is no doubt about it. The only reason we're in court today is because in connection with that injury, Mr. Zuber claims that he was improperly or illegally fired. It is in connection with. And Mr. Zuber realized he was giving up all aspects of this claim, not just this physical injury aspect, but all aspects. I just think it's difficult when you look at this language and to just follow up on what Judge Swartz was alluding to, the last seven lines are just a continuous iteration and reiteration of the fact that this is specifically related to workers' comp and those claims that arise from workers' comp. Well, except for the other language in it that says any and all monies of any kind. And this is the intent of the parties to seek a full and final resolution of all aspects. The intent of this was to release the employer. The unintended consequence of going the other way in this case will be to disincentivize these type of releases. These releases are designed for questionable workers' comp cases, where there is a very questionable claim, and yet a settlement wants to be put in place, and therefore the case should be closed. I don't know that it's a disincentive. Does it just require different drafting? I don't know what else the employer could have put in here. All aspects of the 8-12-2014, whether known or unknown. Known or unknown. So the unknown claim, the employment law claim, was unknown, perhaps to certain Boscovskis. You can bring no further claims of any sort of any kind against us. That's what the purpose of this was up to the date that this release was signed. And that's how Pennsylvania law interprets releases, whether it's improvidently signed. Maybe you should have realized that you had another claim, but it's a general release, and there's case after case in Pennsylvania that says once you sign a general release of this nature, you have released all such claims. If this was a later accruing claim, if the day after he signed this release, Mr. Zuber was at a Boscov store and he tripped and fell and broke his arm, he would have a claim, no question about it. But he gave up all claims that were in existence, known or unknown, and he knew that. He said so in his transcript hearing. His lawyer questioned him and said, you realize that even if tomorrow something happens to you bad, you can't go back and sue Boscovskis. And he said, yes, I understand all that. I don't have anything further. Thank you very much, sir. Thank you, Judge. Mr. O'Rourke, your adversary has focused on the language in the complaint that states derived from, and he also focused on any claims that arise. Why should we view this release in a way more narrow with specific regard to that language than you suggest, than he suggests? Why should it not be as he suggests? Your Honor, Boscovskis wishes now that they had had claimants sign a general release, but that is not what occurred in April of 2015. It's clear when you look at Section 9, though Boscovskis continues to refer to all other monies, the all other monies then goes on to say in connection with the alleged August 12, 2015 work injury claim. Let me ask you this, Counselor. Why couldn't you have put in a provision or insisted upon a provision preserving the right to bring the family medical leave back claim? I mean, it cuts both ways. They could have asked for a provision that the release covered it, and you could have asked for a provision that it didn't. Your Honor, there was no reason to ask for such a provision because this was a compromise and release of only the work injury claim. In retrospect, I bet you wish that there was such a provision because if there was, it would make your position much better today. I mean, you couldn't say there was no reason for it. Well, Your Honor, Boscovskis was the drafter of this compromise and release, and all ambiguities are to be construed against the drafter to the extent the court finds any ambiguities do exist. Appellant's position is that there are no ambiguities. The claim was known to Boscovskis at the time that this release was executed as well. They knew that he was no longer an employee, but there is no reference to a general release of all employment claims. The document continuously refers to a release of claims in connection with the alleged August 12, 2014 work injury. The August 12, 2014 work injury is not the event that triggered the Plaintiff's Family Medical Leave Act and wrongful termination claims. Those were triggered on September 10th at the time the claimant was fired. While there may be some factual overlap as to the fact that the injury caused his need for job-protected leave, which then led to his taking a time off that should have been protected under the Family Medical Leave Act, the fact that there is some factual overlap does not mean the claim is derived from the August 12, 2014 injury. Okay. Any further questions here? I don't have any questions. You know, Boscov has made the argument that they failed to provide the 1099 and that that does not reflect their intention. But Boscov is a sophisticated company. It knows that it's required to issue a 1099. The fact that it didn't issue a 1099 in this instance shows that there was no intention to allocate any of the monies provided to claimant for purposes of a claim outside of the Workers' Compensation Act. There is no separate consideration allocated to a release of any claim. Therefore, there is no – appellant claims, there is no general release. But to the extent there was a release of other claims, there would need to be additional separate consideration. It's not present in this claim. And, again, I would draw Your Honor's attention to Section 13 at the end of the document. It identifies how the benefits were calculated, and it identifies that there are benefits provided within the statute of the Workers' Compensation claim. It's a payable amount and the number of months that they assume that appellant has lost some working ability, and that's how they came up with the amount. It's roughly $8,000, which is the amount that Zuber was provided as a result of this claim. There's no separate consideration for a release of claims that arise from loss of employment. All right, thank you so much. Thank you, Your Honor. Thank you, counsel, for an excellent argument.